Maria R. Metcalf, Pro se
Dennis R. Gray, Pro se
954 Surrey Drive
Chula Vista, CA 91902

FILED

2008 SEP -3 PM 4:41

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

_____ KMH _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA R. METCALF, DENNIS R. GRAY<br><br>Plaintiffs,<br><br>vs.<br><br>DREXEL LENDING GROUP, a California corporation, AURORA LOAN SERVICES, LLC, a California limited liability company, and ROBERT E. WEISS INC., a California Corporation,<br><br>Defendant, | CASE NO. 08-CV-00731-W-POR<br><br>REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO DEFENDANTS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT |

TO THE HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Federal Rules of Evidence, Rule 201, PlaintiffS MARIA R. METCALF, AND DENNIS R. GRAY respectfully requests that this Court take judicial notice of the following:

1. <u>In Re Foreclosure Cases</u>, Case No. No: 1:0-CV-00731, et al., United States District Court, Northern District of Ohio, Eastern Division. A U.S. Federal Judge, C.A. Boyko in Federal District Court in Cleveland, Ohio ruled to dismiss claims by Deutsche Bank National Trust Company. Deutsche Bank's subsidiary was seeking to take possession of 14 homes from Cleveland residents; living in them in order to claims the assets. New York Times, November 17, 2007.

Request for Judicial Notice - 1

2.   A U.S. Federal Judge, Thomas M. Rose in Federal District Court in Dayton, Ohio, ruled to demand in 26 cases that the necessary proof of ownership of the underlying note be presented to the court at the time the foreclosures began. Proof of ownership gives a creditor standing to foreclose against a borrower and is required by law.  New York Times, November 17, 2007.

3.   Federal Rules of Evidence, Rule 1002 requires proof of ownership of the original "wet signature" document to prove title in order to proceed with foreclosure.

4.   <u>Wells Fargo Bank, National Association v. Reyes</u>, 2008 WI. 2466257 (N.Y. Sup.)  The Court found that Wells Fargo Bank did not own the note and denied a foreclosure motion with prejudice.

5.   California Civil Code 1632 (b) requires that Plaintiff conducted business negotiations in his native language- "Tagalog".  Prior to the execution of the agreement plaintiff was never delivered a translation of the contract or agreement in the language in which the contract or agreement was negotiated.

Judicial notice of the foregoing is appropriate because their contents and authenticity cannot reasonably be disputed. Under Federal Rule of Evidence 201 (b), judicial notice is proper for facts that are capable of accurate and ready determination by resorting to sources whose accuracy cannot be

reasonable questioned. Matters that are appropriate for judicial notice include matters of public record. See, Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986). When a party has requested judicial notice and supplied the court with the necessary information, judicial notice is mandatory. (Federal Rule of Evidence 201(d).)

Accordingly, Plaintiffs, MARIA R. METCALF AND DENNIS R. GRAY, requests that this Court take judicial notice of the foregoing publicly recorded documents.

Respectfully submitted,

Dated: 9/3/08

*Maria R. Metcalf*
MARIA R. METCALF

Dated: 9/3/08

*Dennis R. Gray*
DENNIS R. GRAY


ATTACHMENTS

Morgenson, Foreclosures Hit a Snag for Lenders - New York Times, November 17, 2007

California Civil Code § 1632 (b)

1
2
3
4
5
6
7
8
9
10 **CERTIFICATE OF SERVICE**
11
12     I, Margilina Goudie hereby certify that the foregoing Request for Judicial Notice
13 was served by U.S. Mail with adequate postage there upon the Defendant DREXEL
14 LENDING GROUP at 8200 Haven Avenue, Suite 2109, Rancho Cucamonga, CA
15 91730, upon Defendant ROBERT E. WEISS INC. at 920 South Village Oaks Drive,
16 Covina, CA 91724 and upon Defendant AURORA LOAN SERVICES, LLC by serving
17 THOMAS N. ABBOT attorney for Defendant AURORA at Law Offices of PITE
18 DUNCAN, LLP. at 525 Main Street, El Cajon, CA 92022-2289.
19
20
21         Margilina Goudie
           954 Surrey Drive
22         Chula Vista, CA 91902
           Phone (619) 399-1066
23
24         By /s/ Margilina A. Goudie
25         Margilina Goudie ~~July 21st~~, 2008
                              Sept 3rd.
26
27
28

**1632.** (a) The Legislature hereby finds and declares all of the following:

(1) This section was enacted in 1976 to increase consumer information and protections for the state's sizeable and growing Spanish-speaking population.

(2) Since 1976, the state's population has become increasingly diverse and the number of Californians who speak languages other than English as their primary language at home has increased dramatically.

(3) According to data from the United States Census of 2000, of the more than 12 million Californians who speak a language other than English in the home, approximately 4.3 million speak an Asian dialect or another language other than Spanish. The top five languages other than English most widely spoken by Californians in their homes are Spanish, Chinese, Tagalog, Vietnamese, and Korean. Together, these languages are spoken by approximately 83 percent of all Californians who speak a language other than English in their homes.

(b) Any person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of entering into any of the following, shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition in that contract or agreement:

(1) A contract or agreement subject to the provisions of Title 2 (commencing with Section 1801) of, and Chapter 2b (commencing with Section 2981) and Chapter 2d (commencing with Section 2985.7) of Title 14 of, Part 4 of Division 3.

(2) A loan or extension of credit secured other than by real property, or unsecured, for use primarily for personal, family or household purposes.

(3) A lease, sublease, rental contract or agreement, or other term of tenancy contract or agreement, for a period of longer than one month, covering a dwelling, an apartment, or mobilehome, or other dwelling unit normally occupied as a residence.

(4) Notwithstanding paragraph (2), a loan or extension of credit for use primarily for personal, family or household purposes where the loan or extension of credit is subject to the provisions of Article 7 (commencing with Section 10240) of Chapter 3 of Part 1 of Division 4 of the Business and Professions **Code**, or Division 7 (commencing with Section 18000), or Division 9 (commencing with Section 22000) of the Financial **Code**.

(5) Notwithstanding paragraph (2), a reverse mortgage as described in Chapter 8 (commencing with Section 1923) of Title 4 of Part 4 of Division 3.

(6) A contract or agreement, containing a statement of fees or charges, entered into for the purpose of obtaining legal services, when the person who is engaged in business is currently licensed to practice law pursuant to Chapter 4 (commencing with Section 6000) of Division 3 of the Business and Professions **Code**.

(c) Notwithstanding subdivision (b), for a loan subject to this part and to Article 7 (commencing with Section 10240) of Chapter 3 of Part 1 of Division 4 of the Business and Professions **Code**, the delivery of a translation of the statement to the borrower required by Section 10240 of the Business and Professions **Code** in any of the

languages specified in subdivision (b) in which the contract or agreement was negotiated, is in compliance with subdivision (b).

(d) At the time and place where a lease, sublease, or rental contract or agreement described in subdivision (b) is executed, notice in any of the languages specified in subdivision (b) in which the contract or agreement was negotiated shall be provided to the lessee or tenant.

(e) Provision by a supervised financial organization of a translation of the disclosures required by Regulation M or Regulation Z, and, if applicable, Division 7 (commencing with Section 18000) or Division 9 (commencing with Section 22000) of the Financial **Code** in any of the languages specified in subdivision (b) in which the contract or agreement was negotiated, prior to the execution of the contract or agreement, shall also be deemed in compliance with the requirements of subdivision (b) with regard to the original contract or agreement.

(1) "Regulation M" and "Regulation Z" mean any rule, regulation, or interpretation promulgated by the Board of Governors of the Federal Reserve System and any interpretation or approval issued by an official or employee duly authorized by the board to issue interpretations or approvals dealing with, respectively, consumer leasing or consumer lending, pursuant to the Federal Truth in Lending Act, as amended (15 U.S.C. Sec. 1601 et seq.).

(2) As used in this section, "supervised financial organization" means a bank, savings association as defined in Section 5102 of the Financial **Code**, credit union, or holding company, affiliate, or subsidiary thereof, or any person subject to Article 7 (commencing with Section 10240) of Chapter 3 of Part 1 of Division 4 of the Business and Professions **Code**, or Division 7 (commencing with Section 18000) or Division 9 (commencing with Section 22000) of the Financial **Code**.

(f) At the time and place where a contract or agreement described in paragraph (1) or (2) of subdivision (b) is executed, a notice in any of the languages specified in subdivision (b) in which the contract or agreement was negotiated shall be conspicuously displayed to the effect that the person described in subdivision (b) is required to provide a contract or agreement in the language in which the contract or agreement was negotiated, or a translation of the disclosures required by law in the language in which the contract or agreement was negotiated, as the case may be. If a person described in subdivision (b) does business at more than one location or branch, the requirements of this section shall apply only with respect to the location or branch at which the language in which the contract or agreement was negotiated is used.

(g) The term "contract" or "agreement," as used in this section, means the document creating the rights and obligations of the parties and includes any subsequent document making substantial changes in the rights and obligations of the parties. The term "contract" or "agreement" does not include any subsequent documents authorized or contemplated by the original document such as periodic statements, sales slips or invoices representing purchases made pursuant to a credit card agreement, a retail installment contract or account or other revolving sales or loan account, memoranda of purchases in an add-on sale, or refinancing of a purchase as provided by, or pursuant to, the original document.

The term "contract" or "agreement" does not include a home improvement contract as defined in Sections 7151.2 and 7159 of the

Business and Professions **Code**, nor does it include plans, specifications, description of work to be done and materials to be used, or collateral security taken or to be taken for the retail buyer's obligation contained in a contract for the installation of goods by a contractor licensed pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions **Code**, if the home improvement contract or installation contract is otherwise a part of a contract described in subdivision (b).

Matters ordinarily incorporated by reference in contracts or agreements as described in paragraph (3) of subdivision (b), including, but not limited to, rules and regulations governing a tenancy and inventories of furnishings to be provided by the person described in subdivision (b), are not included in the term "contract" or "agreement."

(h) This section does not apply to any person engaged in a trade or business who negotiates primarily in a language other than English, as described by subdivision (b), if the party with whom he or she is negotiating is a buyer of goods or services, or receives a loan or extension of credit, or enters an agreement obligating himself or herself as a tenant, lessee, or sublessee, or similarly obligates himself or herself by contract or lease, and the party negotiates the terms of the contract, lease, or other obligation through his or her own interpreter.

As used in this subdivision, "his or her own interpreter" means a person, not a minor, able to speak fluently and read with full understanding both the English language and any of the languages specified in subdivision (b) in which the contract or agreement was negotiated, and who is not employed by, or whose service is made available through, the person engaged in the trade or business.

(i) Notwithstanding subdivision (b), a translation may retain the following elements of the executed English-language contract or agreement without translation: names and titles of individuals and other persons, addresses, brand names, trade names, trademarks, registered service marks, full or abbreviated designations of the make and model of goods or services, alphanumeric codes, numerals, dollar amounts expressed in numerals, dates, and individual words or expressions having no generally accepted non-English translation. It is permissible, but not required, that this translation be signed.

(j) The terms of the contract or agreement which is executed in the English language shall determine the rights and obligations of the parties. However, the translation of the contract or the disclosures required by subdivision (e) in any of the languages specified in subdivision (b) in which the contract or agreement was negotiated shall be admissible in evidence only to show that no contract was entered into because of a substantial difference in the material terms and conditions of the contract and the translation.

(k) Upon a failure to comply with the provisions of this section, the person aggrieved may rescind the contract or agreement in the manner provided by this chapter. When the contract for a consumer credit sale or consumer lease which has been sold and assigned to a financial institution is rescinded pursuant to this subdivision, the consumer shall make restitution to and have restitution made by the person with whom he or she made the contract, and shall give notice of rescission to the assignee. Notwithstanding that the contract was assigned without recourse, the assignment shall be deemed rescinded and the assignor shall promptly repurchase the contract from the assignee.

HOME PAGE   MY TIMES   TODAY'S PAPER   VIDEO   MOST POPULAR   TIMES TOPICS          Subscribe  Log In  Register Now

The New York Times
# Business

WORLD  U.S.  N.Y./REGION  BUSINESS  TECHNOLOGY  SCIENCE  SPORTS  OPINION  ARTS  TRAVEL  JOBS  REAL ESTATE  AUTOS
                                              HEALTH                    STYLE
MEDIA & ADVERTISING  WORLD BUSINESS  SMALL BUSINESS  YOUR MONEY  DEALBOOK  MARKETS  RESEARCH  MUTUAL FUNDS  MY PORTFOLIO  ALERTS

A new way to make the most of The New York Times on your iPhone.
nytimes.com

More Articles in Business »

## Judge Demands Documentation in Foreclosures

By GRETCHEN MORGENSON

After the recent dismissal of 14 foreclosure cases by a federal judge in Cleveland, another federal judge in Ohio has given lenders 30 days to prove that they own the properties they intend to seize from troubled homeowners in 27 other cases.

**Related**

Times Topics: Mortgages and the Markets

The second judge, Thomas M. Rose of Federal District Court, in Dayton, ruled Thursday that while the lawyer filing 26 of the cases had claimed his clients owned the properties at the time the foreclosures began, he had not submitted the necessary proof to the court.

"Failure in the future by this attorney to comply with the filing requirements," Judge Rose said, "may only be considered to be willful."

Taken with Judge Christopher A. Boyko's dismissal of 14 cases in Cleveland last month, the latest ruling indicates that some courts are growing tougher on lenders foreclosing on delinquent borrowers without providing proof of ownership.

It has long been a common practice for lenders to bring foreclosure proceedings without attaching proof of ownership of the underlying note. Tracking down such documentation may be more challenging because of securitization, the pooling of mortgages into trusts that are subsequently sold to investors.

Citibank is trustee in one case overseen by Judge Rose; it represents a securitization trust sold in 2005 by First Franklin, a loan originator now owned by Merrill Lynch. At issue in the case is a mortgage on a property in Miamisburg, Ohio, for $191,000. The borrower defaulted in August 2006.

Another case involves HSBC, which is foreclosing on a $144,000 mortgage on a property in Dayton. The mortgage was underwritten in 2004 and has been in default since October 2006.

SIGN IN TO E-MAIL OR SAVE THIS
PRINT
REPRINTS
SHARE

FROM THE AUTHOR OF

**MOST POPULAR - BUSINESS**
E-MAILED  BLOGGED

1. Economic View: Is History Siding With Obama's Economic Plan?
2. Entrepreneurs Find Ways to Make Technology Work With Jewish Sabbath
3. Abu Dhabi Puts More Cash on the Line in Hollywood
4. Thomas Bata, 'Shoemaker to the World,' Dies at 93
5. The Evidence Gap: For Widely Used Drug, Question of Usefulness Is Still Lingering
6. Vogue's Fashion Photos Spark Debate in India
7. Wage Gaps for Women Frustrating Germany
8. Despite Lower Oil Prices, Little Relief for Consumers
9. Target to Open Designer-Focused Stores in New York
10. Your Money: Automated Bill Payments Are a Cinch (Not So Fast)

Go to Complete List »


The New York Times  THEATER
nytimes.com/theater
The plot's a tangle; its setting, not at all

| Web | Images | City | News | Video | More ▼ | | MyStuff ▼ | Options ▼ |

**Expand Your Search**
Viggo Mortensen Biography

morgenson New York Times November 17 2007         Advanced Search

Showing 1-10 of 2,130

**Expand Your Search**

Viggo Mortensen Biography

Sponsored Results

**The New York Times Online**
All the news that's fit to click. Free access to NYTimes.com
www.nytimes.com

**17 New York**
Official Hotel Site - Cheap Rates! Lowest rates at 17 new york.
www.kayak.com

**New York Time 2007**
Children's Games, Magic, & Puzzles. Extraordinary Toys, Gifts and More!

**Latest Posts**

NYTimes.com Home
U.S. Open: Safina Cruises Into Semifinals
Found 20 minutes ago

City Room: New Rules to Deter School Bullying
Found 20 minutes ago

Web Results

**University of Iowa News - The New York Times**
News about the University of Iowa. Commentary and archival information about the University of Iowa from The New York Times.

**HSBC Holdings PLC News - The New York Times**
News about HSBC Holdings P.L.C. Commentary and archival information about HSBC Holdings P.L.C. from The New York Times.
topics.nytimes.com/top/news/business/companies/hsbc_ho...
More Results from topics.nytimes.com

**Foreclosures Hit a Snag for Lenders - New York Times**
A federal judge in Ohio has ruled against a longstanding foreclosure practice, potentially creating an obstacle for lenders trying to reclaim properties from troubled borrowers.

· HOME PAGE · MY TIMES · TODAY'S PAPER · VIDEO · MOST POPULAR · TIMES TOPICS    Get Home Delivery  Log In  Register Now

The New York Times                    **Business**                      Business   All NYT

WORLD  U.S.  N.Y. / REGION  BUSINESS  TECHNOLOGY  SCIENCE  HEALTH  SPORTS  OPINION  ARTS  STYLE  TRAVEL  JOBS  REAL ESTATE  AUTOS
MEDIA & ADVERTISING  WORLD BUSINESS  SMALL BUSINESS  YOUR MONEY  DEALBOOK  MARKETS  RESEARCH  MUTUAL FUNDS  MY PORTFOLIO  ALERTS



All the news that's fit to debate.

# Foreclosures Hit a Snag for Lenders

By GRETCHEN MORGENSON

A federal judge in Ohio has ruled against a longstanding foreclosure practice, potentially creating an obstacle for lenders trying to reclaim properties from troubled borrowers and raising questions about the legal standing of investors in mortgage securities pools.

**Related**

Times Topics: Mortgages and the Markets

Judge Christopher A. Boyko of Federal District Court in Cleveland dismissed 14 foreclosure cases brought on behalf of mortgage investors, ruling that they had failed to prove that they owned the properties they were trying to seize.

The pooling of home loans into securities has been practiced for decades and helped propel real estate prices in recent years as investors sought the higher yields that such mortgage trusts could provide. Some $6.5 trillion of securitized mortgage debt was outstanding at the end of 2006.

But as foreclosures have surged, the complex structure and disparate ownership of mortgage securities have made it harder for borrowers to work out troubled loans, in part because they cannot identify who holds the mortgage notes, consumer advocates say.

Now, the Ohio ruling indicates that the intricacies of the mortgage pools are starting to create problems for lenders as well. Lawyers for troubled homeowners are expected to seize upon the district judge's opinion as a way to impede foreclosures across the country or force investors to settle with homeowners. And it may encourage judges in other courts to demand more documentation of ownership from lenders trying to foreclose.

The ruling was issued Oct. 31 by Judge Boyko, and relates to 14 foreclosure cases brought by Deutsche Bank National Trust Company. The bank is trustee for securitization pools, issued as recently as June 2006, claiming to hold mortgages underlying the foreclosed properties.

On Oct. 10, Judge Boyko, 53, ordered the lenders' representative to file copies of loan assignments showing that the lender was indeed the owner of

More Articles in Business »

SIGN IN TO E-MAIL
OR SAVE THIS

PRINT

REPRINTS

SHARE

BASED ON
THE NOVEL

**MOST POPULAR - BUSINESS**
E-MAILED   BLOGGED

1. Economic View: Is History Siding With Obama's Economic Plan?
2. Entrepreneurs Find Ways to Make Technology Work With Jewish Sabbath
3. Abu Dhabi Puts More Cash on the Line in Hollywood
4. Thomas Bata, 'Shoemaker to the World,' Dies at 93
5. The Evidence Gap: For Widely Used Drug, Question of Usefulness Is Still Lingering
6. Vogue's Fashion Photos Spark Debate in India
7. Wage Gaps for Women Frustrating Germany
8. Despite Lower Oil Prices, Little Relief for Consumers
9. Target to Open Designer-Focused Stores in New York
10. Your Money: Automated Bill Payments Are a Cinch (Not So Fast)

Go to Complete List »



The New York Times    TRAVEL
nytimes.com/travel

Case 3:08-cv-00731-W-POR   Document 48   Filed 09/03/2008   Page 11 of 12
09/03/08  03:37pm  P. 003
Foreclosures Hit a Snag for Lenders - New York Times
Page 2 of 4

the note and mortgage on each property when the foreclosure was filed. But lawyers for Deutsche Bank supplied documents showing only an intent to convey the rights in the mortgages rather than proof of ownership as of the foreclosure date.

Saying that Deutsche Bank's arguments of legal standing fell woefully short, the judge wrote: "The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test, their weak legal arguments compel the court to stop them at the gate."

A spokesman for Deutsche Bank declined to comment on the ruling. But the inability of Deutsche Bank, as trustee for the pools, to produce proof of ownership at the time of the foreclosures will fuel borrowers' concerns that they are being forced out of their homes by entities that may not even hold the underlying loans.

"This is the miracle of not having securities mapped to the underlying loans," said Josh Rosner, a specialist in mortgage securities at Graham-Fisher, an independent research firm in New York. "There is no industry repository for mortgage loans. I have heard of instances where the same loan is in two or three pools."

The process of putting together a mortgage pool begins when a home loan is originated by a bank or mortgage lender. That loan is typically sold to a Wall Street firm that pools it with thousands of others. Once a pool is packaged, it is sold to investors in different slices, based on risk. A trustee bank oversees the pool's operations, ensuring that payments made by borrowers go to the appropriate investors.

Lawyers who represent troubled borrowers complain that trustees overseeing home loan pools often do not produce proof, usually in the form of a mortgage note, that their investors own a foreclosed property. And a recent study of 1,733 foreclosures by Katherine M. Porter, an associate professor of law at the University of Iowa, found that 40 percent of the creditors foreclosing on borrowers did not show proof of ownership. Such proof gives a creditor standing to foreclose against a borrower and is required by law.

"The big issue in all these cases, whether we are dealing with a bankruptcy court, a state court or a federal court, is who really owns the mortgage note, and that is allegedly what they securitized," said O. Max Gardner III, a lawyer who represents borrowers in foreclosure in Shelby, N.C. "A collateral question is, has that mortgage note really been transferred and assigned to the securitization trust? If not, then they really don't have standing. It's Law School 101."

When a loan goes into a securitization, the mortgage note is not sent to the trust. Instead it shows up as a data transfer with the physical note being kept

Also in Travel:
Art? Yes. Lattes? Not yet
Vacation plans that avoid the pump
Wine and food tours in Slovenia

ADVERTISEMENT

Need to know more?
Get 50% off home delivery of
The Times.


Buy tickets

Browse Local Business Services
Find businesses near you on The New York Times Business Services Directory.

Advertising & Marketing »   Business & Financial Services »
Business Cash Advance »   Home Remodeling »
Legal Services »   Limousines »
Miscellaneous »   Nightlife Entertainment »
Public Relations »

at a separate document repository company. Such practices keep the process fast and cheap.

Because most foreclosures proceed without challenges from borrowers, few judges have forced trustees like Deutsche Bank and Bank of New York to prove ownership by producing a mortgage note in each case.

Borrower advocates cheered Judge Boyko's ruling.

The plaintiff's argument that "'Judge, you just don't understand how things work,'" the judge wrote, "reveals a condescending mindset and quasi-monopolistic system where financial institutions have traditionally controlled, and still control, the foreclosure process." The cases could be filed again in state court, however.

April Charney, a consumer lawyer at Jacksonville Area Legal Aid in Florida, who has been practicing foreclosure law since the late 1980s, said she rarely sees proof of ownership in cases involving securitization trusts. Her group has 30 to 50 such cases and not one of the lenders' representatives has produced proof of ownership predating the foreclosure action.

"We see a trend toward judges having enough of this trampling of the rules and procedure and care and reverence with which lawyers and litigants and participants in the judicial process should comply," Ms. Charney said. "Hopefully this will convince everybody that the time to work out these home loans is now."

More Articles in Business »

Enjoy the convenience of home delivery of The Times for less than $1 a day

Ads by Google

**Litigation Attorneys**
Business Litigation Attorneys W/ Top Credentials. Call Us Today!
www.ZuberLaw.com

**Is Your Bank In Trouble?**
Free list Of Banks Doomed To Fail. The Banks and Brokers X List. Free!
www.MoneyAndMarkets.com

**Unsecured Debt Help**
Reduce your Unsecured Debt Today, legally, by as much as 40% to 60%.
www.AmericanDebtControl.com

**Tips**
To find reference information about the words used in this article, double-click on any word, phrase or name. A new window will open with a dictionary definition or encyclopedia entry.

**Past Coverage**
HIGH & LOW FINANCE; Reading the Tea Leaves of Financial Statements (November 9, 2007)
Homeowners Feel the Pinch Of Lost Equity (November 8, 2007)
Dubious Fees Hit Borrowers In Foreclosures (November 6, 2007)
THE NATION: What's Behind The Race Gap? (November 4, 2007)

**Related Searches**
Foreclosures
Mortgages
Federal District Courts